UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**MEREDITH LEE WRIGHT FRENCH,**

       **Plaintiff,**

v.                                                      Civil Action No. 1:22-cv-00780

**NC FINANCIAL SOLUTIONS, LLC;**
**1000 Alderman Dr**
**Alpharetta, GA 30005**
**SERVE:  CT Corporation System**
**4701 Cox Rd. Suite 285**
**Glen Allen, VA  23060**

and

**NC FINANCIAL SOLUTIONS OF UTAH,**
**LLC d/b/a NETCREDIT**
**1000 Alderman Dr**
**Alpharetta, GA 30005**
**SERVE:  CT Corporation System**
**4701 Cox Rd. Suite 285**
**Glen Allen, VA  23060**

       **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Meredith Lee Wright French ("Ms. French" or "Plaintiff") was at a low point in her life when she fell victim to Defendants NC Financial Solutions, LLC ("NC Financial") and NC Financial Solutions of Utah, LLC d/b/a NetCredit (collectively, "NetCredit" or "Defendants") illegal internet loan scheme designed gouge vulnerable and unwitting consumers such as Ms. French. Defendants engaged in the very type of usurious scheme that federal and Virginia consumer protection and financial regulatory laws are designed to protect consumer like Ms. French.

# INTRODUCTION

1. Plaintiff Meredith Lee Wright French brings this action for the Defendants' violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, the Virginia Consumer Finance Act ("VCFA"), Va. Code §6.2-1501, Virginia Usury law, Va. Code §6.2-303, and the Virginia Consumer Protection Act ("VCPA"), Va. Code §59.1-198. Defendants have worked as part of an enterprise to charge the Plaintiff interest at more than five times the allowable rate of interest for credit permitted under the laws of the Commonwealth.

2. Defendants operate as an Internet lending scheme offering personal loans and lines of credit ranging from $1,000-$10,000 to consumers with less-than-perfect credit to obtain funds in as little as 1-3 business days upon approval.

3. Defendants impose interest rates in excess of the 12% interest rate cap in Virginia to consumers living in Virginia such as the Plaintiff without obtaining an exemption under the law of the Commonwealth through its representation that it is regulated by the state laws of Utah.

4. This action is brought for equitable and declaratory relief, costs and attorneys' fees pursuant to RICO, 18 U.S.C. §§ 1961 *et seq.*, and in particular treble damages under 18 U.S.C. § 1964(b), as well as a claim for actual, statutory punitive damages, costs and attorneys' fees under the VCPA, Va. Code §59.1-198, and Virginia Usury law, Va. Code §6.2-303, and treble damages under the VCPA, Va. Code 59.1-204(A); and forfeiture of principal, interest, fees and criminal liability under the Virginia Consumer Finance Act. Va. Code §6.2-1540; 1541(A).

# JURISDICTION

5. The Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 18 U.S.C. § 1961.

6. This Court has supplemental jurisdiction of the state law claims regarding the same

transaction and events under 28 U.S.C. § 1367(a).

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omission giving rise to the claim occurred in this district.

8. Defendants transact business in this District, thus establishing personal jurisdiction.

## PARTIES

9. Plaintiff, Meredith Lee Wright French, is a natural person residing in the city of Purcellville, Loudoun County, Virginia, when the events alleged herein occurred.

10. Plaintiff, at all times relevant hereto was a *person* as defined by 18 U.S.C. §1961(3).

11. NC Financial Solutions, LLC is a privately held, for-profit corporation conducting business Virginia and throughout the United States. NC Financial Solutions, LLC is a subsidiary of the Enova International, Inc.

12. NC Financial Solutions of Utah, LLC, d/b/a NetCredit is a Utah company, whose sole member is NC Financial Solutions, LLC's President, David Fisher. NC Financial Solutions, LLC is also a subsidiary of the Enova International, Inc.

13. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14. Violations by Defendants were not mistakes made in good faith, but were knowing, negligent, willful, reckless and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## FACTUAL BACKGROUND

15. Plaintiff brings this action against Defendants for violations of RICO, 18 U.S.C.

§1962 *et seq.*, the VCFA, Va. Code §6.2-1501, Virginia Usury law, Va. Code §6.2-303, the Virginia Consumer Finance Act, Va. Code §§ 6.2-1540, 1541, and the VCPA, Va. Code §59.1-198.

16. Defendants are not eligible for any exception or excuse from compliance with Virginia's law.

17. In or around August 2019, Plaintiff needed money for her and her family's personal expenses and began interacting with Defendants through the internet.

18. To obtain money, Plaintiff accepted an $8,810 consumer loan (herein after referred to as the "loan") from NetCredit on August 13, 2019.

19. She obtained this loan and signed the loan agreement from her home in Virginia using her computer.

20. The loan agreement was signed by David Fisher, the president of NC Financial Solutions, LLC, as sole member of NC Financial Solutions of Utah, LLC d/b/a NetCredit on August 14, 2019.

21. NetCredit charged Plaintiff an annual percentage rate of 64.68% on this loan.

22. Since August 2019, Defendants received biweekly payments from Plaintiff of $249.58 on this loan.

23. From August 2019 through November 2021, Plaintiff's payments to Defendants totaled $12,568.88.

24. Despite Plaintiff having paid over 1.4 times the original principal amount borrowed Defendants claim that it was still owed $8,392.02.

25. Plaintiff continues to make the biweekly payments out of fear that Defendants will report any missed/late payments to the consumer reporting agencies and negatively impact her

4

credit.

26. Plaintiff is a single parent and is responsible for the financial support of her child. The exorbitant amounts of money she has already paid, and continues to pay, Defendants represent groceries or other expenses for her family.

27. Because the loan agreement was executed online at the Plaintiff's home, the place of contracting was the Plaintiff's residence.

28. Performance of the credit contract was accomplished when Defendants deposited the funds into Plaintiff's Virginia bank account at Plaintiff's bank. Plaintiff accessed these funds in Virginia through her normal Virginia banking activities.

29. Because the funds were made available to her in Virginia, the performance of the credit contract took place in Virginia.

30. The credit contract was for the Plaintiff's personal use and is a consumer transaction under both state and federal law.

31. As the entity that signed the credit contract, NC Financial Solutions, LLC is doing business in Virginia as a consumer finance company as defined by Va. Code § 6.2-1500.

32. As the entity that is named in the credit contract, NetCredit is also doing business in Virginia as a consumer finance company as defined by Va. Code § 6.2-1500.

33. Neither NetCredit nor NC Financial Solutions, LLC have been issued a license(s) under Va. Code §6.2-1501(A) to act as consumer finance companies in Virginia.

34. At the time of the loan, NetCredit was not licensed by the Utah Department of Financial Institutions, as the Utah Department of Financial Institutions does not license any non-bank lender like NetCredit to extend consumer credit in Virginia.

35. Utah law does not authorize a non-bank lender like NetCredit to extend consumer

credit in Virginia.

36. The Utah Department of Financial Institutions conducts no regulatory oversight over Defendants' actions that are initiated outside of Utah and performed in Virginia.

37. Utah has no substantial relationship with the transaction between Plaintiff and Defendants, and no reasonable basis exists for Defendants to claim those transactions are subject to Utah law.

38. Defendants have agreed to and, in fact, do work together in an enterprise to make loans to individual consumers for personal, family, household, or other non-business purposes at extremely high rates of interest that are illegal in Virginia.

39. Since Defendants were acting as consumer finance companies in Virginia, they are subject to Virginia lending regulations.

40. Under the law of the Commonwealth, consumer finance companies are not allowed to charge more than 12% interest without first obtaining a license under Virginia Consumer Finance Act.

41. Defendants' 64.68% interest rate on Plaintiff's loan is over five times the legally permitted 12% interest rate in Virginia.

42. Defendants' business purpose and activity in the Commonwealth of Virginia is making illegal loans, which loans were in fact marketed and made to the Plaintiff on the internet.

43. Upon information and belief, as fundamental as the prohibition on usury and loansharking is in the common law, there are people such as Defendants whose schemes seek to circumvent such ancient prohibitions.

44. The Plaintiff suffered actual injuries as a direct result of Defendants' illegal conduct including injury to her property, loss of money, loss of time, physical injuries, sickness, stress,

emotional distress and mental anguish.

# COUNT ONE
## VIOLATION OF RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO")
## 18 U.S.C. § 1962(c) *et seq.*

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

46. Plaintiff was injured in her property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

47. Defendants associated with an enterprise engaged in interstate commerce.

48. Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the collection of an unlawful debt.

49. The debt being collected was unlawful because the rate of interest charged by Defendants greatly exceeded twice the legally allowable rate.

50. The Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the racketeering activity of wire fraud through a scheme to defraud by use of the internet.

51. The enterprise is a web of legally distinct corporations as persons, including each of the Defendants and others, that are associated together for a common purpose of collecting unlawful debts.

52. These entities work together as part of a legally distinct enterprise called Enova International, Inc.

53. As part of the enterprise, the Defendants work together to establish credit contracts with consumers at far more than twice the allowable interest rate.

54. As part of the enterprise, the Defendants work together to establish credit contracts

with consumers through the internet by falsely representing that NetCredit is licensed by the Utah Department of Financial Institutions.

55. As part of the enterprise, the Defendants work together to establish credit contracts with consumers through the internet by falsely representing that the transaction is covered by Utah law.

56. Defendants falsely represented it was licensed and that the transaction was governed by Utah law, and thus underhandedly designated a choice of law clause that goes to the essence of the contract.

57. The enterprise manages and supervises the affairs of the Defendants.

58. Defendants' actions in violation of RICO are a direct and proximate cause of the Plaintiff's injuries.

59. Therefore, each Defendants is liable to the Plaintiff for three times Plaintiff's actual damages, punitive damages, attorneys' fees, costs as well as other such relief permitted by 18 U.S.C. § 1964(c).

**COUNT TWO**
**VIOLATION OF VIRGINIA CONSUMER FINANCE ACT ("VCFA")**
**Va. Code § 6.2-1501 *et seq.***

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

61. Unless exempt from its provisions, the VCFA prohibits any person from engaging in the business of making loans in any principal amount to individuals for personal, family, household, or other non-business purposes, and charging, contracting for, or receiving directly or indirectly, any interest, chares, compensation, consideration or expense which in the aggregate are greater than the rate otherwise permitter by Va. Code § 6.2-303 without first obtaining a consumer

8

finance license from the Virginia State Corporation Commission (SCC). Va. Code. § 6.2-1501.

62. Pursuant to Va. Code § 6.2-303, the contract rate of interest permitted on credit is 12% per year unless a higher rate of interest is authorized by some other section of the Code of Virginia.

63. Neither of the Defendants has ever held a consumer finance license issued by the Virginia SCC.

64. Neither of the Defendants is subject to any statutory exemption from having a consumer finance license.

65. Although Defendants presented the credit contract as regulated by Utah law under the Utah Department of Financial Institutions, they are not licensed by that entity, and that entity does not authorize out-of-state entities to extend credit in Virginia.

66. In fact, the law they refer to as regulating the agreement, Utah Consumer Credit Code, U.C.A. 70C-1-101, only applies to transaction with Utah citizens.

67. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

68. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

69. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transaction.

70. Defendants' false representations regarding governance, licensure and applicability of Utah law underhandedly designated a choice of law clause that goes to the essence of the

contract in order to avoid the federal and state statutes designed to protect consumers from the very predatory lending that they visited upon the Plaintiff.

71. A lender who takes any action to make or collect on any loan which is in violation of Va. Code § 6.2-1501 shall not collect, receive, or retain any principal, interest, or charges whatsoever with respect to the loan and any principal or interest paid on the loan shall be recoverable by the person by or for whom payment was made. Va. Code § 6.2-1541.

72. Therefore, the Defendants' credit contract with Plaintiff is void and the Defendants are forbidden from collecting any payments, in any manner, from Plaintiff.

73. As of November 15, 2021, Plaintiff had paid to the Defendants a total of $12,568.88 on this credit and she is allowed to recover this amount and any further payments she makes to Defendants as a result of the unlawful credit contract.

## COUNT THREE
## VIOLATION OF VIRGINIA USURY
## Va. Code § 6.2-303

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

75. Virginia usury laws capping interest rates at 6% actually predate the founding of the United States of America.

76. Virginia courts have construed usury laws liberally in order to "advance remedies and suppress mischief."

77. Defendants have engaged in the exact type of mischief that Virginia has sought to suppress.

78. Pursuant to Va. Code § 6.2-303(A), § 6.2-1501(A), the contract rate of interest permitted on credit is 12% per year unless a higher rate of interest is authorized by some other

section of the Code of Virginia.

79. In Virginia, usury statutes are the clarification of the Commonwealth's public policy hostile to usurious conduct.

80. Although Defendants presented the credit contract as regulated by Utah law under the Utah Department of Financial Institutions, they are not license by that entity, and that entity does not authorize out-of-state entities to extend credit in Virginia.

81. In fact, the law they refer to as regulating the agreement, Utah Consumer Credit Code, U.C.A. 70C-1-101, only applies to transaction with Utah citizens.

82. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

83. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

84. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transaction.

85. Defendants charged an interest rate far greater than the permitted 12% and therefore the credit contract was in violation of Va. Code § 6.2-303.

86. Plaintiff made payments subject to this usurious interest rate.

87. Under Va. Code § 6.2-305(A), Plaintiff is entitled to recover as statutory damages the total amount of interest paid to Defendants in excess of 12%, plus twice the total amount of interest paid.

## COUNT FOUR
### VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT ("VCPA")
### Va. Code §§ 59.1-196 *et seq.*

88. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

89. Defendants are suppliers regulated by the VCPA, as the term is defined at Va. Code § 59.1-198.

90. Although Defendants presented the credit contract as regulated by Utah law under the Utah Department of Financial Institutions, they are not license by that entity, and that entity does not authorize out-of-state entities to extend credit in Virginia.

91. In fact, the law they refer to as regulating the agreement, Utah Consumer Credit Code, U.C.A. 70C-1-101, only applies to transaction with Utah citizens.

92. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

93. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

94. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transaction.

95. Plaintiff entered into a consumer transaction with Defendants regulated by the Virginia Consumer Protection Act.

96. In the transaction, Defendants violated Va. Code § 59.1-200(A)(2) and (14), including but not limited to, by:

    a.    claiming that the credit transaction was regulated by Utah Consumer Credit Code, U.C.A. 70C-1-101, when this statute applies only to consumer transaction made to citizens of Utah and Defendants knew Plaintiff was a citizen of Virginia at the time of the transaction.

    b.    claiming that the credit transaction was regulated by Utah law and even though the extension of credit was not made to or from Utah, but was a loan made in Virginia to a Virginia resident by companies operating out of Chicago, Illinois.

    c.    extending credit in Virginia for more than 12% interest without first obtaining a consumer finance license.

97. Defendants' violations were willful, or in the alternative were negligent and not the result of a bona fide error.

98. Plaintiff has paid and continues to pay for an unlawful credit contract and despite having already paid over $2,000 above the amount she borrowed, Plaintiff still owes almost the entire balance of the amount she borrowed. Plaintiff's loss is a direct result of Defendants' violations of the VCPA and other state and federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks following relief:

A.    Declaratory relief that Plaintiff's credit contract is null and void;

B.    Judgment permanently enjoining the Defendants from any attempt to collect any moneys from Plaintiff in connection with the credit contract;

C.    Order disgorging Defendants of all payments made under the unlawful credit contract and imposing a constructive trust in favor of Plaintiff;

D. Award treble damages under 18 U.S.C. § 1964(b).

E. Award a minimum of $500.00 for each violation of the VCPA;

F. Award treble damages under Va. Code 59.1-204(A) or at minimum $1000.00 for each violation of the VCPA;

G. Award a sum of twice the total interest paid plus the total interest paid in excess of 12% under Va. Code 6.2-305(A).

H. Reasonable attorneys' fees and costs under the RICO, VCPA, and Virginia usury law;

I. Pre-judgment and post-judgment interest as provided by law;

J. Order such other and further relief as may be deemed proper and just by the Court.

**TRIAL BY JURY IS DEMANDED**

**MEREDITH LEE WRIGHT FRENCH**

_____/s/_____
Susan M. Rotkis, VSB #40693
Attorneys for Plaintiff
Price Law Group, APC
2290 E. Speedway Blvd.
Tucson, AZ 85719
Tel: (818) 600-5506
Fax: (818) 600-5406
E-mail: susan@pricelawgroup.com